## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LAURA HAWKINS,              )
                                   )
            **Plaintiff,**    )
                                   )    **CIVIL ACTION**
**v.**                           )
                                   )    **No. 17-2687-KHV**
**BOARD OF COUNTY COMMISSIONERS OF**    )
**COFFEY COUNTY KANSAS, et al.,**    )
                                   )
            **Defendants.**    )
_____)

## MEMORANDUM AND ORDER

Laura Hawkins brings suit against the Board of County Commissioners of Coffey County, Christopher Phelan, Karen Maley and Brenda Cherry. Under 42 U.S.C. § 1983, plaintiff asserts that in terminating her employment, the Board, Phelan and/or Maley violated her constitutional rights to free speech, procedural due process and equal protection. In addition, against the Board and Cherry, plaintiff asserts claims for straight and overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 <u>et seq.</u>, and the Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-313 <u>et seq.</u> This matter is before the Court on <u>Defendant's Motion For Partial Dismissal</u> (Doc. #43) filed August 10, 2018. For reasons stated below, the Court sustains the motion in part.

## Legal Standards

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. <u>Id.</u> at 679-80; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). To determine whether a complaint states a plausible claim for relief, the Court draws

on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Plaintiff bears the burden of framing her complaint with enough factual matter to suggest that she is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim when she pleads factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendants have acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendants' liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading that offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Iqbal, 556 U.S. at 678. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not "shown" – that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context; what constitutes fair notice under Fed. R. Civ. P. 8(a)(2) depends on the type of case. Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008) (citing Phillips v. Cty. of Allegheny, 515 F.3d 225, 232-33 (3d Cir. 2008)).

### Facts

Plaintiff alleges the following facts.

For over nine years, plaintiff worked as a clerk in the County Treasurer's office for Coffey

County, Kansas.[1]  First Amended Complaint (Doc. #39) ¶ 7.  The County Treasurer, an elected official, heads the office.  Id. ¶ 7.  Plaintiff did not ask the County to assign her to work in a department headed by an elected official.  Id. ¶ 9.  When the County hired plaintiff, it did not tell her that because she worked under an elected official, it would treat her differently than county employees who did not work under elected officials.  Id.

The County issued plaintiff a handbook.  Id. ¶ 9.  The handbook does not state that some policies apply only to employees who do not work for elected officials.  Id. ¶ 9.  Through the handbook and its practices, the County created an implied contract that it would not fire plaintiff (1) except for cause; (2) for performance-related reasons without a pre-termination hearing; or (3) because of political activity.  Id. ¶ 56.

The County's Policy and Procedures Manual ("PPM") contains many of the County's personnel policies and procedures.[2]  Id. ¶ 29.  Plaintiff accepted and continued her employment with the County in part based on promises contained in the PPM and personnel customs of the County. Id.  The PPM states as follows:

> The County shall not abridge the rights of Employees to engage in political activity, including the holding [of] public office, except as specifically included in this [manual.]… Employees are neither appointed to, nor retained in, county service based upon their political affiliation or activity, with the exception of Officials who serve at the pleasure of their constituency.

Id. ¶ 30.  The PPM further provides that (1) it intends to ensure that employee retention and separation are based upon an employee's qualifications and fitness and compliant with federal and Kansas laws; (2) it applies to all employees; (3) the tenure of County employees shall be based on

---

[1]    The record does not reflect when plaintiff began her employment.

[2]    The record is unclear whether the PPM is the same as the handbook referenced above.

reasonable standards of job performance and personal and professional conduct; (4) terminations that are not for cause are discouraged; and (5) terminations by supervisors are subject to Standards of Conduct and Discipline and Grievance Procedures.

The PPM outlines Standards of Conduct, i.e. "standards for high quality work performance and conduct," as performance expectations which employees must meet or possibly face discipline, including discharge. Id. ¶ 36. When the County discharges, suspends or demotes an employee for poor performance or violation of the Standards of Conduct, the PPM provides a mandatory pre-disciplinary hearing. Id. ¶ 37. If the County discharges an employee for disciplinary reasons, the PPM provides a right to notice and a hearing, representation by counsel, written notice of the reasons for discharge and an explanation of the evidence. Id. In addition, the PPM provides a right to present oral or written reasons why the County should not suspend or discharge the employee. Id. In discharging plaintiff, the County used none of these procedures. Id.

The PPM also provides a grievance procedure "to be utilized specifically for claims or dispute by an employee with respect to the interpretation, meaning or application of the provisions of county departmental policies and procedure and does not [include] ADA, disciplinary action, sexual harassment or staffing and salary disputes . . . ." Id. ¶ 38. The PPM states that "terminations by Supervisors [are] subject to the Standards of Conduct and the Grievance Procedures." Id. An employee may initiate a grievance by making a complaint to her supervisor. Id. ¶ 41. If the supervisor is the subject of the grievance, the employee may go to the County Attorney "for advice and counsel on how to enter the Grievance Procedure." Id.

With regard to employees who do not work for elected officials, the County follows its policies and procedures and allows those employees to file grievances and have pre-termination

hearings regarding disciplinary discharges. Id. ¶ 64. With regard to employees who work for elected officials, the County does not require adherence to its policies and procedures and does not provide pre- or post-termination hearings regarding discharges. Id. ¶ 65.

While plaintiff worked for the County, she complained to Christopher Phelan, the County Attorney, about various personnel decisions which she believed violated anti-discrimination laws and/or county policies. Id. ¶ 10. Phelan said that he could not help because elected officials could do whatever they wanted. Id. Phelan stated that it would be different if plaintiff worked in a department headed by an appointed official, but different rules applied for employees who worked for elected officials. Id. The County treated employees who worked in departments headed by non-elected officials more favorably than employees who worked in departments headed by elected officials. Id. ¶ 11.

From 2012 to 2017, Brenda Cherry served as County Treasurer and supervised plaintiff's employment. Id. ¶ 6. From 2014 to 2016, when plaintiff reported on her time card that she worked through lunch or other overtime hours, Cherry would "white out" the extra time to deprive plaintiff of overtime pay. Id. ¶ 14. Although Cherry knew that plaintiff was working during that time, she forbid plaintiff from recording time which she worked during her lunch hour. Id. Every day, plaintiff arrived to work 15 to 20 minutes early and spent the extra time working. Id. Cherry instructed plaintiff to wait on customers who arrived before 8:00 a.m. Id. Cherry knew that plaintiff worked during that time and did not pay her regular or overtime wages. Id.

In 2016, plaintiff ran against Karen Maley in the Republican primary for the position of County Treasurer.[3] Id. ¶ 17. Maley won the primary and became the Republican candidate. Id. In

_____

[3] The record does not reflect whether Cherry ran for re-election in 2016.

the general election, plaintiff campaigned as a write-in candidate for County Treasurer. Id.

During the campaign and outside of the office, plaintiff accused the Treasurer's office of "playing favorites." Id. ¶ 20. Plaintiff said that the office applied rules differently and treated some citizens more favorably than others. Id. Plaintiff vowed to treat all citizens the same. Id. Also, plaintiff "took issue with the County's practice of not encouraging elected officials to make personnel decisions 'subject to' the County's policies and procedures." Id. ¶ 21. Among other places, plaintiff expressed this opinion at a candidate forum in front of Maley and Phelan. Id. In addition, plaintiff criticized County employees for campaigning and writing a letter to the newspaper editor while using County employee titles. Id. ¶ 22. Plaintiff said that such conduct violated County policies and that the County paid employees while they were campaigning. Id.

Maley won the general election for County Treasurer.[4] Her term was set to begin in October of 2017. Id. ¶ 17.

In early 2017, Cherry resigned from her position as County Treasurer.[5] Id. ¶ 23.

On January 30, 2017, the Board of County Commissioners of Coffey County met in an executive session to discuss terminating plaintiff's employment. Id. ¶ 24. The Board and Phelan knew that plaintiff had unsuccessfully challenged Maley in the election.

On February 1, 2017, Maley was sworn in as County Treasurer. Id. ¶ 23.

The same day, as her "first executive order," Maley fired plaintiff. Id. ¶ 26. Prior to meeting with plaintiff, Maley had procured plaintiff's final paycheck and drafted a termination letter which stated as follows:

---

[4]     The record does not state the date of the general election.

[5]     The record does not state whether Cherry resigned before her term ended.

Effective immediately, you are hereby dismissed from your job duties in the Coffey County Treasurer's office. Pursuant to KSA 19-503(a), I am exercising my right to appoint, promote, demote and dismiss all assistants. You are hereby allowed 15 minutes to gather your personal belongings and return any and all keys to the office and/or building. Enclosed is your final check.

Id. The County and Phelan assisted Maley by helping her draft the termination letter and by providing an early paycheck for plaintiff. Id. ¶ 51. The County knew that Maley was firing plaintiff because of her candidacy and because of statements which plaintiff had made in her campaign. Id.

Under the PPM, plaintiff was entitled to file a grievance to challenge Maley's right to terminate her and failure to follow County policies. Id. ¶ 40. In the days following her discharge, plaintiff sent Phelan two emails which stated that she needed his assistance and asked him to contact her. Id. ¶ 42. She also twice called Phelan and spoke with his secretary. Id. Phelan did not respond. Id. ¶ 43.

In the evening of February 13, 2017, plaintiff sent Phelan a third email which stated as follows:

When I received my termination letter from Karen Maley on February 1, no one said anything about how I could file a grievance about it. According to 11.2 of the Policy Manual, it says I should contact the county attorney for advice on how to enter the grievance procedure. Can you tell me what I need to do?

Id. ¶ 43. Phelan did not respond. Id.

The next day, on February 14 at 2:30 p.m., plaintiff called Phelan's office and spoke with his secretary. Id. ¶ 44. The secretary said that Phelan was in court and had not been in all day. Id. Plaintiff told the secretary about her email and said that she wanted to speak with Phelan. Id. The secretary said that she would give Phelan the message.

The next day, on February 15 at 10:15 a.m., plaintiff called Phelan's office and again spoke with his secretary. Id. ¶ 45. The secretary told plaintiff that Phelan had not received her email and

that he would not be available to talk with her that day.  Id.  Plaintiff re-sent the email and called

back to let the secretary know and to ask that Phelan check his junk email if he did not receive it.

Id. ¶ 46.  Plaintiff told the secretary that she had a very brief question for Phelan and that it was

important that he call her.  Id.  The secretary replied that she would deliver the message, but he was

unavailable all day.  Id.

In the afternoon of February 15, Phelan responded to plaintiff's email.  Id. ¶ 47.  Phelan

refused to help and stated that because he represented the County, he was conflicted from giving her

advice and she should contact a private attorney.  Id.  At that point, plaintiff had exhausted the

PPM's instructions on how to invoke the grievance procedure and had not received an opportunity

for a hearing.  Id. ¶ 48.

As a result of her discharge, plaintiff has lost wages and been unable to find a job with

comparable salary and benefits.  Id. ¶ 49.  In addition, she has suffered mental distress.  Id.

## Analysis

Under 42 U.S.C. § 1983, plaintiff asserts the following claims:  (1) against Maley, the

County and Phelan, violation of her First Amendment rights (Count 1); (2) against Maley, the

County and Phelan, violation of her rights to due process under the Fifth and Fourteenth

Amendments (Count 2); (3) against the County and Phelan, violation of her rights to equal

protection (Count 3).  In addition, against the County and Cherry, plaintiff asserts claims for straight

and overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (Count

4) and Kansas Wage Payment Act ("KWPA"), K.S.A. § 44-313 et seq. (Count 5).  Defendants ask

the Court to dismiss all claims except the FLSA and KWPA claims (Counts 4 and 5).[6]

---

[6]        Defendants initially moved to dismiss the KWPA claim but subsequently withdrew
(continued...)

# I.    First Amendment (Count 1 – Against Maley, The County And Phelan)

In Count 1, plaintiff asserts that in violation of her rights under the First Amendment, Maley, the County and Phelan terminated her employment (1) because she announced her candidacy for County Treasurer and (2) on account of statements which she made during her campaign.  See First Amended Complaint (Doc. #39) ¶ 51.  Defendants assert that (1) plaintiff has failed to state a plausible claim and (2) even if plaintiff has stated a claim, they are entitled to qualified immunity.

## A.    Announcement Of Candidacy

Plaintiff asserts that defendants fired her because of "her announcements of her candidacy." First Amended Complaint (Doc. #39) ¶ 51.  Defendants assert that as a matter of law, the First Amendment does not protect the mere fact of candidacy.  See Memorandum In Support Of Defendants' Motion For Partial Dismissal (Doc. #44) filed August 10, 2018 at 10-11.[7]  In response to defendant's motion, plaintiff does not assert otherwise.  See Response To Motion To Dismiss (Doc. #47) filed August 31, 2018 at 9-15.  This Court has found that the First Amendment does not protect a public employee's right to continued employment following her candidacy.  See Mayfield v. Merchant, No. 09-2033-KHV, 2010 WL 5288152, at *4 n.6  (D. Kan. Dec. 17, 2010); Warren v. Gaston, 55 F. Supp.2d 1230, 1235 (D. Kan. 1999) (citing Carver v. Dennis, 104 F.3d 847, 850-51 (6th Cir. 1997)).  Accordingly, to the extent plaintiff alleges that defendants fired her because of the mere fact of her candidacy – or because she announced her candidacy – the Court dismisses the claim with prejudice.

---

[6](...continued)
that portion of their motion.  See Defendants' Memorandum (Doc. #44) at 33-35; Defendants' Reply In Support Of Defendants' Motion For Partial Dismissal (Doc. #50) filed September 21, 2018 at 26.

[7]    To the extent defendants attempt to submit matters outside the pleadings, see Memorandum In Support (Doc. #44) at 10-11, the Court declines to consider them.

**B.    Statements Made During Campaign**

Plaintiff also claims that defendants fired her because of statements which she made during her campaign.  First Amended Complaint (Doc. #39) ¶ 51.  Specifically, plaintiff asserts that defendants fired her because she (1) accused the Treasurer's office of "playing favorites" in its treatment of citizens ("first statement"); (2) "took issue with the County's practice of not encouraging elected officials to make personnel decisions 'subject to' the County's policies and procedures" ("second statement"); and (3) criticized County employees for campaigning on the clock and writing a letter to the editor using their County employee titles ("third statement").  Id. ¶¶ 20-22.  Defendants assert that plaintiff has failed to state a plausible claim.[8]

In determining whether a governmental employer has denied an employee's constitutional rights by terminating her employment for speaking on matters of public concern, the Court uses the test set out in Garcetti v. Ceballos, 547 U.S. 410 (2006), and Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, 391 U.S. 563 (1968), and adopted in Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1202 (10th Cir. 2007).  See Dixon v. Kirkpatrick, 553 F.3d 1294, 1301-1302 (10th Cir. 2009).  The Garcetti/Pickering test examines the following factors: (1) whether plaintiff spoke pursuant to her official duties; (2) whether her speech involved a matter of public concern;

---

[8]        Without providing legal analysis or case citation, defendants conclusively assert that under Rule 9(f), Fed. R. Civ. P., plaintiff has failed to provide "crucial" and "material" allegations regarding date, time and place of the alleged statements.  Memorandum In Support (Doc. #44) at 13.  The Court disagrees.  Rule 9(f) states that "[a]n allegation of time or place is material when testing the sufficiency of a pleading."  Fed. R. Civ. P. 9(f).  It does not require plaintiff to set out specific allegations regarding time and place, but merely states the significance of the allegations when asserted.  See Rusty Eck Ford-Mercury Corp. of Leavenworth v. Am. Custom Coachworks, Ltd., 184 F. Supp.2d 1138, 1146 (D. Kan. 2002) (quoting 5 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1309, at 696 (1990)).  Whether procedural rules require specific allegations of time and place depends on, iter alia, the substantive nature of the suit and general rules of pleading.  Id.  On this record, defendants have not shown that the rules require such here.

(3) whether government interests in promoting the efficiency of public service, as an employer, are sufficient to outweigh plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether absent the protected conduct, defendant would have reached the same employment decision. Id. at 1302. The first three factors are issues of law for the Court to decide, and the last two factors are factual issues for the factfinder to decide. Id.

Defendants assert that plaintiff cannot establish the second, third or fourth factors. Specifically, defendants assert that (1) plaintiff has not sufficiently alleged statements that involve matters of public concern; (2) its interests in promoting the efficiency of public service, as an employer, are sufficient to outweigh plaintiff's free speech interests; and (3) plaintiff has not sufficiently alleged a causal connection between the speech and her dismissal. Defendants further assert that even if plaintiff has stated a plausible First Amendment violation, they are entitled to qualified immunity on the claim.

As noted, plaintiff asserts that defendants fired her because during her campaign, she made the following statements:

> First statement: accusing Treasurer's office of "playing favorites" in its treatment of citizens.

> Second statement: taking issue with the County's practice of not encouraging elected officials to make personnel decisions "subject to" County policies and procedures.

> Third statement: criticizing County employees for campaigning on the clock and writing a letter to the editor using their County employee titles.

See First Amended Complaint (Doc. #39) ¶¶ 20-22.

### 1. Public Concern

Defendants assert that with respect to the second and third statements, plaintiff cannot

satisfy the second factor under <u>Garcetti/Pickering</u>, <u>i.e.</u> she cannot show that the statements involved a matter of public concern.[9] <u>See</u> <u>Memorandum In Support</u> (Doc. #44) at 13-14. Speech involves a matter of public concern when the speaker intends to bring to light actual or potential wrongdoing or breach of public trust by a public official or to disclose any evidence of corruption, impropriety or other malfeasance within a governmental entity. <u>Eisenhour v. Weber Cty.</u>, 744 F.3d 1220, 1228 (10th Cir. 2014) (citing <u>Conaway v. Smith</u>, 853 F.2d 789, 796 (10th Cir. 1988) (quotations omitted)). An employee's speech must not merely relate generally to a subject matter that is of public interest, but must "sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government." <u>Wilson v. City of Littleton, Colo.</u>, 732 F.2d 765, 768 (10th Cir. 1984). To judge whether particular speech relates merely to internal workplace issues – as opposed to matters of public interest – courts examine the "content, form, and context" of the speech, which includes scrutinizing whether the speaker's purpose was to bring an issue to the public's attention or to air a personal grievance. <u>Schrier v. Univ. of Colo.</u>, 427 F.3d 1253, 1263 (10th Cir. 2005); <u>Moore v. City of Wynnewood</u>, 57 F.3d 924, 932 (10th Cir. 1995) (court must look beyond general topic of speech to evaluate more specifically what was said on topic); <u>Gardetto v. Mason</u>, 100 F.3d 803, 812 (10th Cir. 1996) (to determine whether plaintiff's speech addresses personal grievances or broader public purpose, courts focus on speaker's motive). Speech aimed at exposing improper operations or questioning the integrity of government officials clearly concerns public interests.[10]

---

[9] As noted, in the second statement, plaintiff criticized the County practice of not encouraging elected officials to make personnel decisions "subject to" County policies and procedures. In the third statement, plaintiff criticized County employees for campaigning on the clock and writing a letter to the editor using their County employee titles.

[10] When deciding whether speech qualifies as a matter of public concern, courts customarily focus on whether speech was calculated to disclose wrongdoing or inefficiency or other

(continued...)

Conaway, 853 F.2d at 796.  In contrast, speech regarding "internal personnel disputes" ordinarily will not involve a public concern.  Id. (citing Connick v. Myers, 461 U.S 138, 146 (1983)).  Similarly, criticisms of internal management decisions and complaints addressing the structure of purely internal administrative bodies do not reflect public concerns.  Gardetto, 100 F.3d at 813-14 (details of internal budgetary allocations not matters of public concern).

Defendants assert that on its face, the second statement – i.e. that plaintiff criticized the County for not encouraging elected officials to make personnel decisions subject to its policies and procedures – involved merely a personal grievance between plaintiff and her employer and not a matter of public concern.  See Memorandum In Support (Doc. #44)  at 14.  Plaintiff responds that "[t]his was not a beef about a policy specific to [plaintiff].  It was a general statement of a choice an elected official was making that could make a difference to the county's coffer and to harmony between county employees."  Response To Motion To Dismiss (Doc. #47) at 11.  At this stage in the proceedings, the record is not sufficiently developed to enable the Court to conclude that as a matter of law, the statement involved solely a personal grievance regarding the conditions of plaintiff's own employment.  To the contrary, accepting plaintiff's allegations as true, one could plausibly conclude that the second statement involved a matter of public concern, namely that plaintiff intended the speech to inform the public of potential wrongdoing or impropriety with respect to County practices regarding the treatment of employees who are subject to personnel decisions of elected officials.  The Court overrules defendants' motion on this ground.

Defendants assert that the third statement – i.e. that plaintiff criticized County employees for

_____

[10](...continued)
malfeasance on the part of governmental officials in the conduct of their official duties.  Patrick v. Miller, 953 F.2d 1240, 1248 (10th Cir. 1992).

campaigning on the clock and writing a letter to the editor using County employee titles – did not involve a matter of public concern.  See Memorandum In Support (Doc. #44) at 14.  In the amended complaint, plaintiff asserts as follows:

> During the campaign and outside of the office, Plaintiff was critical of county employees for campaigning and writing a letter to the editor while using their county employee titles.  She said this violated the County policies and that employees were being paid while they were campaigning, which was a matter of public concern.

First Amended Complaint (Doc. #39) ¶ 22.  Accepting the allegations as true, one could plausibly conclude that the third statement involved a matter of public concern, i.e. that plaintiff intended the speech to inform the public of actual or potential wrongdoing or impropriety with respect to government conduct.  The Court overrules defendants' motion on this ground.

### 2.  Weighing Of Interests

Defendants assert that plaintiff cannot meet the third factor, i.e. she cannot show that her free speech interest outweighs its interest in promoting the efficiency of public service.  In support of its argument, defendants present statements which plaintiff wrote in the local newspaper, which defendants contend "plainly show discord and disruptions within the Treasurer's office, along with the undeniable potential for more."  Memorandum In Support (Doc. #44) at 14.  Defendants assert that "[t]he small number of employees in the Treasurer's office only exacerbates the potential for disruption in effective functioning."  Id.  In ruling on defendants' motion to dismiss, however, the facts are not sufficiently developed in this regard.  Accepting plaintiff's allegations as true, the Court cannot conclude that as a matter of law, defendants' interests in carrying on an efficient and effective workplace outweighs plaintiff's interest in free speech.  The Court overrules defendants' motion on this ground.

### 3. Causation

Defendants assert that with respect to the first and third statements, plaintiff cannot satisfy the fourth factor, i.e. she cannot show a causal connection between the statements and her dismissal.[11] See Memorandum In Support (Doc. #44) at 14-16. Specifically, defendants assert that plaintiff has failed to plead facts that support an inference of causal connection because (1) she does not allege that Maley or Phelan knew of the alleged statements and (2) it is not plausible to infer that statements regarding persons other than Maley caused Maley to fire her. See id. at 16. Defendants also assert that because more than four months elapsed between the statements and plaintiff's discharge, the Court cannot infer causation based on temporal proximity. See id. at 15.

Defendants assert that plaintiff has not sufficiently alleged a causal connection because she does not allege that Maley or Phelan knew of the alleged statements. Plaintiff alleges, however, that she made the statements to the public in the context of an election campaign against Maley. At this juncture, i.e. without the benefit of discovery and accepting plaintiff's allegations as true, one could plausibly conclude that Maley knew about the statements. Moreover, plaintiff alleges that she made at least one statement at a candidate forum in the presence of Maley and Phelan. See First Amended Complaint (Doc. #39) ¶ 21.

Defendants assert that plaintiff has not sufficiently alleged a causal connection because it is not plausible to infer that statements regarding persons other than Maley caused Maley to terminate her employment and too much time elapsed between the statements and her discharge. The Court disagrees. Plaintiff asserts that in the context of an election campaign against Maley, she made

---

[11] As noted, in the first statement, plaintiff accused the Treasurer's office of "playing favorites" in its treatment of citizens. In the third statement, plaintiff criticized County employees for campaigning on the clock and writing a letter to the editor using their County employee titles.

statements critical of the employees and office over which Maley assumed authority. Moreover, plaintiff alleges that on Maley's first day in office, as her "first executive order," Maley discharged plaintiff. Accepting plaintiff's allegations as true, one could plausibly conclude that Maley fired plaintiff in retaliation for statements which she made in the campaign. The Court overrules defendants' motion on this ground.

### C.    Qualified Immunity

Defendants assert that even if plaintiff has stated a plausible claim, Maley and Phelan are entitled to qualified immunity.[12] In deciding a motion to dismiss based on qualified immunity, the Court considers whether plaintiff has alleged facts which establish a violation of a constitutional right and whether at the time of the alleged misconduct, the right at issue was clearly established. See Leverington v. City of Colo. Springs, 643 F.3d 719, 732 (10th Cir. 2011). Whether a right is "clearly established" is an objective test. The relevant inquiry is whether in the situation confronted, it would be clear to a reasonable official that his or her conduct was unlawful. See Stearns v. Clarkson, 615 F.3d 1278, 1282 (10th Cir. 2010). "In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Id. (quotation omitted).

As discussed, plaintiff has alleged facts which state a plausible claim for violation of her First Amendment rights. Defendants assert that at the time of the alleged violation, the law did not clearly establish that their alleged conduct was unlawful. See Memorandum In Support (Doc. #44)

---

[12]    The Court notes that qualified immunity may apply only to the claims against individual defendants Maley and Phelan and not to claims against the County. See, e.g., Langley v. Adams Cty., Colo., 987 F.2d 1473, 1477 (10th Cir. 1993).

at 18-19. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Zia Trust Co. ex rel. Causey v. Montoya, 597 F.3d 1150, 1155 (10th Cir. 2010) (quoting Cruz v. City of Laramie, 239 F.3d 1183, 1187 (10th Cir. 2001) (internal quotation omitted)). Although there need not be a case with identical facts, the constitutional issue must be placed beyond debate by previous jurisprudence. Mullenix v. Luna, — U.S. — , 136 S.Ct. 305, 308 (2015) (per curiam). And the jurisprudence on which plaintiff relies must be "particularized to the facts of the case." White v. Pauly, — U.S. —, 137 S.Ct. 548, 552 (2017) (internal quotation omitted). A general test defining the elements of a constitutional violation generally will not provide clearly established law in anything but "an obvious case." Id. (quoting Brosseau v. Haugen, 543 U.S. 194, 199 (2004)). Plaintiff bears the burden to show that the law was clearly established. See Anderson v. Worstell, No. 11-1327, 492 Fed. Appx. 913, 916 (10th Cir. Aug. 1, 2012) (citing Hilliard v. City & Cty. of Denver, 930 F.2d 1516, 1518 (10th Cir. 1991)); Dodge v. Shoemaker, 695 F. Supp.2d 1127, 1137 (D. Colo. 2010).

Defendants assert that because the Garcetti/Pickering analysis involves a factually-intensive balancing test, a right asserted under the First Amendment is less likely to be "clearly established." Memorandum In Support (Doc. #44) at 18. Defendants assert that in this case, no Supreme Court or Tenth Circuit opinion would place beyond debate "the fact intensive analysis" under Garcetti/Pickering. Id. In support of their argument, defendants cite Melton v. City of Okla. City, 879 F.2d 706 (10th Cir. 1989). In Melton, a discharged police officer claimed, inter alia, that defendants violated his First Amendment rights in firing him because he testified on behalf of a criminal defendant and communicated with defense counsel. At trial, the jury rendered a verdict in

-17-

favor of plaintiff. Defendants appealed. The Tenth Circuit found that the trial court improperly submitted to the jury the question whether the First Amendment protected plaintiff's speech. The Tenth Circuit concluded that the error was harmless, however, because as a matter of law defendants had violated plaintiff's First Amendment rights. See id. at 713-17. In addressing whether defendants were entitled to qualified immunity, the Tenth Circuit noted that "because a rule of law determined by a balancing of interests is inevitably difficult to clearly anticipate, it follows that where Pickering balancing is required, the law is less likely to be well established than in other cases."[13] Id. at 729. As to plaintiff's claim that defendants fired him for testifying in the criminal case, the Tenth Circuit found that defendants were not entitled to qualified immunity because at the time of the violation, the law clearly established that the First Amendment protects trial testimony and that a governmental employer cannot retaliate against an employee based on unfavorable trial testimony. See id. at 729-30. As to plaintiff's claim that defendants fired him for communicating with defense counsel, the Tenth Circuit reached a different result. It found that under Pickering, plaintiff's interest in speaking to defense counsel outweighed defendants' interests in smooth intergovernmental relations, but the law did not clearly establish the result of these competing interests such that a reasonable official would have understood that the conduct was unlawful. See id. at 730.

---

[13]        The Tenth Circuit further stated as follows:

In some circumstances, the fact-specific nature of the Pickering balancing may preclude a determination of "clearly established law," thereby giving rise to qualified immunity under [Harlow v. Fitzgerald, 457 U.S. 800 (1932)]. This is most likely to occur in situations where supervisors, in a reasonable and good-faith exercise of their duties, discipline employees without the direction that would come through analogous cases.

Melton, 879 F.2d at 729.

Defendants cite <u>Melton</u> for the proposition that where the <u>Garcetti/Pickering</u> test applies, the law is less likely to be "clearly established." While that may be true, it does not mandate such a conclusion, particularly on a motion to dismiss. As noted, the Tenth Circuit decided <u>Melton</u> post-trial and concluded that one of the First Amendment claims survived a qualified immunity defense. The other cases which defendants cite involved rulings on summary judgment and/or post-trial. <u>See</u> <u>Memorandum In Support</u> (Doc. #44) at 18 (citing <u>Nord v. Walsh Cty.</u>, 757 F.3d 734, 743 (8th Cir. 2014) (summary judgment) (plaintiff's statements not of such public and social importance to override city's interest in maintaining efficiency and reputation of workplace); <u>Diaz-Bigio v. Santini</u>, 652 F.3d 45, 53 (1st Cir. 2011) (summary judgment) (where investigation concluded plaintiff's statements were false and groundless, reasonable officials would not clearly know First Amendment barred termination of employment); <u>Brannon v. Finkelstein</u>, 754 F.3d 1269, 1278-79 (11th Cir. 2014) (summary judgment) (affirming qualified immunity based on benefit of discovery unavailable to district court at motion to dismiss stage); <u>Benson v. Allphin</u>, 786 F.2d 268, 275-79 (7th Cir. 1986) (reviewing district court qualified immunity rulings post-trial).[14] Defendants cite only one case, <u>Guercio v. Brody</u>, 911 F.2d 1179 (6th Cir. 1990), which granted a motion to dismiss based on qualified immunity. That case involved unique facts which are not present here. <u>See</u> <u>id.</u> at 1188 (where judicial secretary circulated old newspaper articles regarding judicial nominee, reasonable official could have questioned whether speech was protected and concluded that it impaired court's interests in restoring public confidence and smooth operations).

---

[14]    Defendants also cite <u>Pierce v. Smith</u>, 117 F.3d 866 (5th Cir. 1997), which appears inapplicable. In <u>Pierce</u>, a medical resident alleged that defendants violated her Fourth Amendment rights by requiring her to provide a urine sample to test for drug use. At trial, the jury found in favor of plaintiff. Defendants appealed, asserting that they were entitled to qualified immunity. The Fifth Circuit found that under the circumstances of that case, reasonable officials would not have clearly known that their conduct was unlawful. <u>See</u> <u>id.</u> at 880-83.

Defendants cite one case, <u>Ridpath v. Bd. of Governors Marshall Univ.</u>, 447 F.3d 292, 321 (4th Cir. 2006), which actually contravenes their position. In <u>Ridpath</u>, a former university employee claimed that defendants violated his First Amendment rights by terminating his adjunct teaching position in retaliation for speaking out against the university's conduct during an investigation by the National Collegiate Athletic Association. Defendants moved to dismiss, asserting qualified immunity. The district court overruled the motion. Defendants filed an interlocutory appeal. The Fourth Circuit affirmed, finding that plaintiff had sufficiently alleged a violation of clearly established law of which a reasonable person would have known. <u>Id.</u> at 320-21. The court noted that in light of the "sophisticated balancing" involved in First Amendment questions, "only infrequently will it be clearly established that a public employee's speech on a matter of public concern is constitutionally protected." <u>Id.</u> at 320 (quoting <u>McVey v. Stacy</u>, 157 F.3d 271, 277 (4th Cir. 1998)). At the motion to dismiss stage, however, the Fourth Circuit determined that plaintiff had alleged that defendants had retaliated against him for making protected statements that they did not like – conduct which did "not merely implicate the gray edges" of his First Amendment right, but went "to its very core." <u>Ridpath</u>, 447 F.3d at 321. The Fourth Circuit found that accepting plaintiff's allegations as true, "a clearer violation of constitutionally protected free speech would be difficult to fathom." <u>Id.</u> It therefore concluded that plaintiff had alleged a violation of clearly established law. <u>Id.</u>

Similarly, here, plaintiff alleges that defendants fired her in retaliation for making statements that they did not like. Accepting the allegations as true, plaintiff undoubtedly asserts a violation of clearly established law. On this record and at this stage in the proceedings, it would be premature to find that defendants are entitled to qualified immunity. <u>See</u> <u>Mayfield v. Merchant</u>, 09-2033-KHV,

2010 WL 397083, at *5 (D. Kan. Jan. 25, 2010) (overruling qualified immunity defense on motion

to dismiss First Amendment claim for retaliatory discharge for statements made in campaign);

Brantley v. Unified Sch. Dist. No. 500, No. 08-2059-KHV, 2008 WL 2079411, at *6 (D. Kan.

May 15, 2008) (overruling qualified immunity defense on motion to dismiss; pleadings adequately

alleged First Amendment violation and record insufficiently developed to allow detailed analysis

of speech or conduct at issue); Hankins v. Town of Lahoma, CIV-16-295-D, 2016 WL 7443176, at

*5 (W.D. Okla. Dec. 27, 2016) (overruling qualified immunity defense on motion to dismiss where

facts in complaint alleged clear First Amendment violation); Maxfield v. Bressler, 20 F. Supp.3d

1084, 1090-91 (D. Colo. 2013) (same). Defendants' motion is overruled on this ground.

## II.     Procedural Due Process (Count 2 – Against Maley, The County And Phelan)

In Count 2, plaintiff asserts that Maley, the County and Phelan violated her rights to

procedural due process by depriving her of property rights to the terms of her employment and to

participate in certain grievance procedures. See First Amended Complaint (Doc. #39) at 11-12;

Response To Motion To Dismiss (Doc. #47) at 16.[15] The Fourteenth Amendment protects citizens

from the deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend.

XIV, § 1. To state a procedural due process claim, plaintiff must allege that (1) she possessed a

constitutionally protected property interest to which due process protection applied; and

(2) defendants did not afford her "an appropriate level of process." Copelin-Brown v. N.M. State

Personnel Office, 399 F.3d 1248, 1254 (10th Cir. 2005) (quoting Hennigh v. City of Shawnee,

---

[15]     In response to defendants' motion, plaintiff states that she asserts only a procedural
due process claim and that to the extent she alleges procedural due process claims "based on
anything other than the deprivation of her property rights to the terms of her employment and to
grievance procedures," she withdraws the claims. Response To Motion To Dismiss (Doc. #47)
at 16.

155 F.3d 1249, 1253 (10th Cir. 1998)).

As noted, plaintiff claims that defendants deprived her of constitutionally protected interests without due process. Specifically, plaintiff claims that she had property interests in the right to continued employment and a right to participate in grievance hearings upon termination from employment. The Constitution does not create property interests; rather, they arise from independent sources such as state statutes, local ordinances, established rules or mutually explicit understandings. See Perry v. Sindermann, 408 U.S. 593, 601 (1972). The Court determines the existence of a property interest based on state law. See Bishop v. Wood, 426 U.S. 341, 344 (1976). Thus, the Court must determine whether plaintiff has alleged facts sufficient to support a property interest under Kansas law. See Graham v. City of Okla. City, Okla., 859 F.2d 142, 146 (10th Cir. 1988).

### A.    Right To Continued Employment

Plaintiff asserts that County personnel policies and procedures created an implied contract under which Maley could terminate her employment only for cause. Kansas law presumes that public employment is at will. See Washington v. Unified Gov't of Wyandotte Cty., 847 F.3d 1192, 1201 (10th Cir. 2017). To alter that arrangement, an employee may show a formal guarantee of continuing employment under state law or a written contract which expressly fixes the duration of employment or otherwise limits the employer's ability to discharge the employee. See Robert v. Bd. of Cty. Comm'rs of Brown Cty., Kan., 691 F.3d 1211, 1220 (D. Kan. 2012); Singh v. Shonrock, 15-cv-9369-JWL, 2017 WL 4552139, at *12 (D. Kan. Oct. 12, 2017). Absent an express contract, Kansas law recognizes an implied contract if the facts and circumstances show mutual intent to contract. See Robert, 691 F.3d at 1220;  Kastner v. Blue Cross & Blue Shield of Kan., Inc.,

21 Kan. App.2d 16, 23, 894 P.2d 909, 915 (1995). The parties' intent is normally a question of fact

for the jury. See Morriss v. Coleman Co., 241 Kan. 501, 512, 738 P.2d 841, 848 (1987). Relevant

factors include (1) the understanding and intent of the parties; (2) the conduct of the parties; (3) the

usages of the business; (4) the situation and objective of the parties giving rise to the relationship;

(5) the nature of employment; and (6) any other circumstances surrounding the employment

relationship which would tend to make clear the intention of the parties at the time the employment

relationship commenced. Id., 241 Kan. at 513, 738 P.2d at 848-49. The parties must have mutual

intent to enter into an employment contract; plaintiffs' unilateral expectations of continued

employment are insufficient. See Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1492 (10th Cir.

1995).

Defendants assert that County personnel policies and procedures did not apply because under

K.S.A. § 19-503 and Board of Cty. Comm'rs of Lincoln Cty. v. Nielander, 275 Kan. 257,

62 P.3d 247 (2003), county policy cannot encroach on an elected official's authority to hire and fire.

The Court agrees. Regarding the elected position of country treasurer, Section 19-503 states, in part,

as follows:

> (a) The county treasurer may appoint a deputy [and] also may appoint, promote,
> demote and dismiss additional deputies and any assistants necessary to carry out the
> duties of the office.
> * * *
> (c) Any personnel action taken by the county treasurer under this section shall be
> subject to the following: (1) Personnel policies and procedures established by the
> board of county commissioners for all county employees other than elected officials.
> * * *

K.S.A. § 19-503. While the plain language of subsection (c)(1) seems to state that county personnel

policies and procedures apply to personnel actions taken by the county treasurer, in Nielander the

Kansas Supreme Court found that such language does not give county commissioners the ability to

supersede an elected official's power to appoint, promote, demote or dismiss personnel. <u>See</u> <u>Nielander</u>, 275 Kan. at 266-67, 62 P.3d at 254.[16]  In light of this authority, plaintiff cannot establish that County personnel policies and procedures limited Maley's ability to terminate her employment. <u>See, e.g.</u>, Kan. Atty. Gen. Op. No. 2017-7, 2017 WL 730375, at *2 (Feb. 21, 2017) (Schmidt) (under <u>Nielander</u>, county personnel policy unable to supersede county treasurer power to appoint, promote, demote or dismiss personnel); <u>Allen v. Kline</u>, 507 F. Supp.2d 1150, 1163 (D. Kan. 2007) (where county lacks authority to override district attorney decision to discharge personnel, county does not have authority to create implied contract for continued employment).  Accordingly, plaintiff has not alleged facts sufficient to support a claim for deprivation of a property interest in continued employment.[17]

### B.    Right To Participate In Grievance Proceeding

Plaintiff asserts that she had a property interest in the right to participate in grievance proceedings regarding the termination of her employment.  <u>See</u> <u>First Amended Complaint</u> (Doc. #39) at 11-12; <u>Response To Motion To Dismiss</u> (Doc. #47) at 24-26.  In <u>Carnes v. Parker</u>, 922 F.2d 1506, 1511 (10th Cir. 1991), the Tenth Circuit recognized that although procedural protections alone are insufficient to create a property interest in continued employment, they can sustain an entitlement to the procedures themselves.  <u>See</u> <u>id.</u> (citing <u>Vinyard v. King</u>, 728 F.2d 428, 432 n.15 (10th Cir. 1984); <u>Asbill v. Housing Auth. of Choctaw Nation of Okla.</u>, 726 F.2d 1499, 1501-02 (10th

---

[16]    <u>Nielander</u> involved K.S.A. § 19-805(d), which contains similar language regarding a sheriff's authority to hire and fire and states that a sheriff's personnel actions are "subject to," <u>inter alia</u>, county personnel policies.  <u>Nielander</u>, 275 Kan. at 266-67, 62 P.3d at 254 (quoting K.S.A. § 19-805(d)).

[17]    Alternatively, the Court finds that Maley and Phelan are entitled to qualified immunity on this claim because at the time of the alleged violation, the law was not clearly established.  <u>See, e.g.</u>, <u>Greene v. Barrett</u>, 174 F.3d 1136, 1142-43 (10th Cir. 1999).

Cir. 1984)).

In the amended complaint, plaintiff asserts that she had a right to notice and an opportunity to be heard both before and/or after her discharge. See First Amended Complaint (Doc. #39) ¶¶ 59, 62. Plaintiff asserts that for employees who are discharged for work performance, the County promises a pre-termination hearing. See First Amended Complaint (Doc. #39) ¶ 60. Plaintiff, however, does not allege that defendants discharged her because of work performance. Defendants assert that based on plaintiff's own allegations, she was not entitled to a pre-termination hearing. See Defendants' Memorandum (Doc. #44) at 27. Plaintiff does not respond to this argument. See Response To Motion To Dismiss (Doc. #47) at 25-27. The Court agrees that plaintiff has not stated a plausible claim for relief based on deprivation of a property interest in a pre-termination hearing. As to this claim, the Court sustains defendants' motion.

Regarding her termination, plaintiff asserts that based on County policies and procedures, she was entitled to notice and an opportunity to be heard through the grievance procedure. See Response To Motion To Dismiss (Doc. #47) at 25-26. Specifically, in the amended complaint, plaintiff alleges that the PPM provides for the grievance procedure "to be utilized specifically for claims or dispute by an employee with respect to the interpretation, meaning or application of the provisions of county departmental policies and procedure and does not include[] ADA, disciplinary action, sexual harassment or staffing and salary disputes . . . ." First Amended Complaint (Doc. #39) ¶ 38.

Defendants assert that the grievance procedure did not apply because plaintiff "is not arguing about the interpretation, meaning, or application of a policy provision." Defendants' Memorandum (Doc. #44) at 27. Defendants assert that in this case, plaintiff is challenging Maley's

right to terminate her employment under K.S.A. § 19-503, which is a matter of statutory interpretation and does not fall within the purpose of the grievance procedure. <u>Id.</u> at 27-28. Defendants' argument misses the mark. In essence, it appears that defendants are arguing that because plaintiff could not have prevailed on her claims, she was not entitled to notice and a hearing under the grievance procedure. The record, however, is not sufficiently developed in this regard. For example, in <u>Allen v. Kline</u>, this Court found that even though the county could not override the district attorney's decision to discharge plaintiffs, the county apparently had authority to conduct grievance hearings to determine whether plaintiffs were entitled to other relief, such as eligibility for future county employment.[18] <u>See</u> <u>Allen</u>, 507 F. Supp.2d at 1164. Here, plaintiff alleges facts which plausibly suggest that under County policies and procedures, she was entitled notice and an opportunity to respond regarding the termination of her employment and that defendants refused to allow her to initiate and/or participate in grievance proceedings. The Court overrules defendants' motion with respect to this claim.

### C. Qualified Immunity

Defendants assert that even if plaintiff has sufficiently alleged a violation of her due process rights, Maley and Phelan are entitled to qualified immunity because their conduct did not violate clearly established law. As noted, in deciding whether the law was clearly established, the Court considers whether in the situation confronted, a reasonable official would clearly understand that her conduct was unlawful. <u>See</u> <u>Stearns</u>, 615 F.3d at 1282. Ordinarily, in order for the law to be clearly established, plaintiff must cite a Supreme Court or Tenth Circuit decision on point, or clearly

---

[18] For similar reasons, the Court rejects defendants argument that plaintiff lacks standing to bring a due process claim because she has not alleged an injury in fact. <u>See</u> <u>Defendants'</u> <u>Memorandum</u> (Doc. #44) at 29-29.

established weight of authority from other courts which have found the law to be as the plaintiff maintains. Id.

In support of her due process claim regarding the right to a grievance proceeding, plaintiff cites only one case, Bell v. Bd. of Cty. Comm'rs of Jefferson Cty., No. 03-2148-KHV, 2004 WL 624972 (D. Kan. March 29, 2004), which she asserts "mirrors" this case. Response To Motion To Dismiss (Doc. #47) at 25. In Bell, this Court found that plaintiff had presented evidence sufficient to establish genuine issues of material fact as to whether he had protected property interests in an implied contract of employment and in the grievance procedure set forth in the employee handbook. See id. at *15-16. Defendant agreed that if plaintiff had a property interest in his employment, he was entitled to notice and an opportunity to respond. See id. at *16. The parties disagreed, however, as to whether plaintiff had received the process which was due. See id. at *15-16. Unlike this case, Bell did not involve whether county grievance procedures apply when an elected official terminates an employee pursuant to her statutory authority to hire and fire subordinate employees. Plaintiff points to no cases with similar facts, let alone a case from the Supreme Court or Tenth Circuit. On this record, with respect to plaintiff's claim for violation of a right to participate in the grievance procedure, Maley and Phelan are entitled to qualified immunity because the law was not clearly established at the time of the alleged violation.

### III. Equal Protection (Count 3 – Against The County And Phelan)

Plaintiff asserts that the County and Phelan violated her rights to equal protection by treating her differently from employees who do not work for elected officials. See First Amended Complaint (Doc. #39) at 12-13. Specifically, plaintiff asserts that because she worked for an elected official, the County denied her the right to file a grievance and participate in a post-termination hearing

regarding her discharge. See id. Plaintiff asserts that had the County assigned her to work for a non-elected official, it would have provided her the benefit of County policies and procedures. Id. ¶ 68.

The Equal Protection Clause essentially directs that all similarly situated persons should be treated alike. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Although certain classifications – such as race or national origin – are subject to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest, here plaintiff does not allege that she belongs to a suspect class. See, e.g., McNeal v. Houston, No. 06-2565-KHV, 2007 WL 1032373, at *1 (D. Kan. April 5, 2007). Thus, rational basis scrutiny applies. See City of Cleburne, 473 U.S. at 442-46; Davoll v. Webb, 194 F.3d 1116, 1145 (10th Cir. 1999). Under the rational basis test, the Court must uphold the policy if any reasonably conceivable set of facts could provide a rational basis for the classification. Spragens v. Shalala, 36 F.3d 947, 951 n.3 (10th Cir. 1994) (quoting FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993)). Here, in light of the statutory and legal authority which provide that a county lacks authority to override an elected official's decision to discharge personnel, defendants clearly had a rational basis to treat plaintiff differently from employees of non-elected officials. The Court therefore dismisses the equal protection claim for failure to state a claim upon which relief can be granted.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Partial Dismissal (Doc. #43) filed August 10, 2018 is **SUSTAINED in part**. The Court dismisses the following claims: (1) that defendants fired plaintiff because of the fact of her candidacy (part of Count 1); (2) that defendants violated plaintiff's rights to procedural due process by depriving her of property interests in the right to a pre-termination hearing (part of Count 2); (3) that defendants violated plaintiff's rights to procedural due process by depriving her of property interests in continued employment (part of

Count 2); and (4) that defendants violated her rights to equal protection (Count 3).

The following claims remain in the case: (1) against the County, Phelan and Maley, violation of plaintiff's First Amendment rights in firing her in retaliation for statements which she made during her campaign against Maley (part of Count 1); (2) against the County, violation of plaintiff's rights to procedural due process by depriving her of property rights in post-termination grievance procedures (part of Count 2); and (3) against the County and Cherry, failure to pay straight and overtime wages under the FLSA and KWPA (Counts 4 and 5).

Dated this 19th day of March, 2019 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge